UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                        :
IN RE SEPTEMBER 11 LITIGATION      :    21 MC 97 (AKH)
                                                        :
                                                        :    This document relates to:
                                                        :
                                                        :    *Falkenberg v. AMR Corp., et al.*
                                                        :    02 Civ. 7145 (AKH)
                                                        :
                                                        :    *Teague v. AMR Corp., et al.*
                                                        :    03 Civ. 6800 (AKH)
------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Warsaw Convention)

On September 11, 2001, five terrorists hijacked American Airlines Flight 77 en route from Washington Dulles International Airport to Los Angeles International Airport, and crashed it into the Pentagon, killing themselves, 53 passengers and the six-person crew.  Leslie Ann Whittington and Sandra D. Teague were two of the unfortunate passengers.  They had purchased tickets for onward travel from Los Angeles to Sydney, Australia.

Plaintiff Ruth Falkenberg, as Personal Representative for the Estate of Leslie Ann Whittington, and plaintiff Elaine Teague, as Personal Representative for the Estate of Sandra D. Teague ("Plaintiffs") brought suit against American Airlines and others ("Defendants") under the Air Transportation Safety and System Stabilization Act of 2001, alleging claims under the Warsaw Convention and on various other grounds.[1]  On March 21, 2007, Plaintiffs moved for

---

[1] Defendants in both complaints are: American Airlines, Inc.; AMR Corp.; Airtran Airways, Inc.; Atlantic Coast Airlines, Inc.; Continental Airlines, Inc.; Delta Airlines, Inc; National Airlines, Inc.; Northwest Airlines Corp.; United Airlines, Inc.; U.S. Airways, Inc.; Argenbright Security, Inc.; Securicor, PLC; Metropolitan Washington Airports Authority; and the Boeing Company.  The counts in both complaints are: 1) negligence of American Airlines; 2) negligence of all airline defendants; 3) Warsaw Convention liability of American Airlines; 4) negligence of security company defendants; 5) negligence of airport defendant; 6) strict liability of Boeing; 7) negligence of Boeing; 8) breach of warranty by Boeing; 9) wrongful death against all defendants; 10) survival against all

1

summary judgment, arguing that under Article 17 of the Warsaw Convention, defendant American Airlines, Inc. ("Defendant") is strictly liable for Plaintiffs' injuries and further, because of facts claimed not to be in dispute, that Defendant cannot sustain an affirmative defense under Article 20 of the Warsaw Convention that the carrier and its agents had "taken all necessary measures to avoid the damage or that it was impossible for them to take such measures." American Airlines opposed the motion.

For the reasons stated below, Plaintiffs' motion is GRANTED in part and DENIED in part. In addition, Plaintiffs' non-Warsaw Convention claims are DISMISSED.

## Discussion

**I.     Applicable Law**

  A. Warsaw Convention and Montreal Protocol No. 4

In 1934, President Franklin D. Roosevelt, with the advice and consent of the Senate, proclaimed adherence by the United States to a treaty applying "to all international transportation of persons, baggage, or goods performed by aircraft for hire." Convention for Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), reprinted in note following 49 U.S.C. § 40105 ("Warsaw Convention"); Andreas F. Lowenfeld & Allan I. Mendelsohn, The United States and the Warsaw Convention, 80 HARV. L. REV. 497, 502 (1967). In 1998, the United States ratified Montreal Protocol No. 4 to Amend the [Warsaw Convention] as Amended by the Protocol Done at the Hague on 28 September 1955, 2145 U.N.T.S. 36 ("Montreal Protocol No. 4"), which took effect on March 4, 1999. See Avero Belgium Ins. v. American Airlines, Inc., 423 F.3d 73, 83 (2d Cir. 2005).

---

defendants; 11) wrongful death and survival based on res ipsa loquitur against all defendants; and 12) negligent infliction of emotional distress against all defendants.

       i.   Air Carrier's Presumptive Liability under Article 17

Article 17 of the Warsaw Convention makes air carriers presumptively liable for injuries to passengers:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passengers, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Warsaw Convention, art. 17; Magan v. Lufthansa German Airlines, 339 F.3d 158, 161 (2d Cir. 2003) ("[Article 17] creates a presumption of carrier liability for passenger injuries sustained in the course of air travel.").

To prevail under Article 17, the plaintiff must show that an "accident" caused his injuries. Air France v. Saks, 470 U.S. 392, 396 (1985). An "accident" is "an unexpected event or happening that is external to the passenger" and causes the passenger's injury. Id. at 405. By contrast with the common law tort of negligence, under Article 17 the plaintiff need only prove that an "accident" caused his injuries; he need not prove that the defendant carrier caused his injuries. See id. at 407 ("Article 17 … involves an inquiry into the nature of the event which caused the injury rather than the care taken by the airline to avert injury") (emphasis in original); cf. Kinney Shoe Corp. v. Alitalia Airlines, No. 79 Civ. 919, 1980 U.S. Dist. Lexis 9565 (S.D.N.Y. 1980) ("The relevant inquiry is not whether an act of the carrier proximately caused the loss in a traditional tort sense, but rather whether the loss was caused by an occurrence during the transportation."). And because "[a]ny injury is the product of a chain of causes," the passengers must only "be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." Id. at 406; see also Olympic Airways v. Husain, 540 U.S. 644 (2004). As Defendant concedes, a terrorist hijacking is an "accident" within the meaning of Article 17. See Def. Mem. at 7 (citing Pflug v. Egyptair Corp., 961 F.2d 26, 29 (2d Cir. 1992)).

3

    ii. <u>Air Carrier's Affirmative Defense under Article 20</u>

  Article 20 of the Warsaw Convention provides an affirmative defense to air carriers against Article 17's presumptive liability. Article 20, as amended by Montreal Protocol No. 4, provides:

> In the carriage of passengers and baggage, and in the case of damage occasioned by delay in the carriage of cargo, the carrier shall not be liable if he proves that he and his servants have taken all necessary measures to avoid the damage or that it was impossible for them to take such measures.[2]

Montreal Protocol No. 4, art. V (amending Warsaw Convention, art. 20). Most courts that have considered the meaning of "all necessary measures" have concluded that Article 20 cannot literally require a defendant to take all necessary measures because if all such measures had actually been taken, the plaintiff's injury—the damage—would not have occurred. Rather, the clause is to be "construed to mean 'all reasonable measures.'" <u>Manufacturers Hanover Trust Co. v. Alitalia Airlines</u>, 429 F. Supp. 964, 967 (S.D.N.Y. 1977) <u>aff'd</u> 573 F.2d 1292 (2d Cir. 1977); <u>see also</u> <u>Verdesca v. American Airlines, Inc.</u>, No. 3-99 Civ. 2022, 2000 WL 1538704 (N.D. Tex. 2000); <u>Obuzor v. Sabena Belgian World Airlines</u>, No. 98 Civ. 0224, 1999 WL 223162 (S.D.N.Y. 1999); <u>Vildex S.A.I.C. v. United Airlines</u>, No. 94 Civ. 4304, 1996 WL 733081 (E.D.N.Y. 1996).

  The burden of proving an affirmative defense under Article 20, even construed as "all reasonable measures," is high. Article 20 requires "an undertaking embracing <u>all</u> precautions that in sum are appropriate to the risk, <u>i.e.</u>, measures reasonably available to defendant and reasonably calculated, in cumulation, to prevent the subject loss." <u>Manufacturers Hanover Trust</u>, 429 F. Supp. at 967 (emphasis added). Thus the carrier may not "escape liability

---

[2] Montreal Protocol No. 4 left the relevant language of the 1929 Warsaw Convention, as translated into English, intact. In the original French, Article 20(1) of the Convention read in relevant part: "Le transporteur n'est pas responsable s'il prouve que lui ses préposés ont pris toutes les mesures nécessaires pour éviter le dommage ou qu'il leur était impossible de les prendre." 49 Stat. 3005.

4

under Article 20 … by demonstrating no more than its recourse to some—as opposed to all—reasonable measures." Id.

The scope of "all reasonable measures" is not limited to that which the relevant statutes and regulations require. Even if Congress has regulated the field of aviation security so pervasively that no room is left for concurrent state regulation—an open question of law in this Circuit, see Aldana v. Air East Airways, Inc., 477 F. Supp. 2d 489, 491 (D. Conn. Mar. 15, 2007); Shupert v. Contintental Airlines, Inc., No. 00 Civ. 2743 (LMM), 2004 WL 784859 at *3 (S.D.N.Y. 2004)—a duly ratified treaty retains its force as co-equal federal law under the Supremacy Clause, U.S. CONST. art. VI, cl. 2. Thus a jury may find that an air carrier complied with all of its regulatory obligations, but nevertheless failed to take all reasonable measures to avoid the damage caused by the accident. An air carrier may be able to show, however, that particular statutes or regulations constrained its acts and omissions such that it did, in fact, take all the precautions it was legally permitted to take, for it would hardly be "reasonable" to expect a carrier to violate regulations. Cf. Witty v. Delta Airlines, Inc., 366 F.3d 380 (5th Cir. 2004) (holding that "any warning that passengers should not stay in their seats, but should instead move about to prevent [deep vein thrombosis], would necessarily conflict with any federal determination that, all things considered, passengers are safer in their seats"). The carrier has the burden to prove the defense that it took all reasonable measures within the context of the regulatory scheme. See e.g., Grey v. American Airlines, Inc., 227 F.2d 282, 285 (2d Cir. 1955).

### iii. Limits on Air Carrier's Liability under Article 22

An air carrier's liability to passengers under Article 17 is limited to 125,000 francs per passenger unless, "by special contract, the carrier and the passenger … agree to a higher limit of liability." Warsaw Convention, art. 22(1). In 1996, all domestic airlines and a

5

majority of foreign airlines operating in the United States signed and implemented the International Air Transport Association ("IATA") Intercarrier Agreement on Passenger Liability, see Blanca I. Rodriguez, Recent Developments in Aviation Liability Law 66 J. AIR L. & COM. 21, 35 (2000), pursuant to which the carriers agreed to "take action to waive the limitation of liability on recoverable compensatory damages in Article 22 … so that recoverable compensatory damages may be determined and awarded by reference to the law of the domicile of the passenger." IATA Intercarrier Agreement on Passenger Liability ¶ 1, Ex. 1 to Pls. Local Civ. Rule 56.1 Stmt.

Defendant American Airlines incorporated the IATA Intercarrier Agreement into its tariff—the terms and conditions of carriage between passenger and carrier—as follows:

> (a) The carrier shall not invoke the limitation of liability in Article 22(1) of the Convention as to any claim for recoverable compensatory damages arising under Article 17 of the Convention.
>
> (b) The carrier shall not avail itself of any defense under Article 20(1) of the Convention with respect to that portion of such claim which does not exceed 100,000 Special Drawing Rights.[3]
>
> (c) Except as provided in paragraphs (a) and (b) hereof, the carrier reserves all defenses available under the Convention to such claims.

American Airlines Int'l Passenger Rules Tariff Rule 55(B), Ex. 4 to Pls. Local Civ. Rule 56.1 Stmt. By contract, therefore, Defendant waived the Warsaw Convention's limits on liability; waived the Article 20 defense below 100,000 Special Drawing Rights; and reserved the Article 20 defense above 100,000 Special Drawing Rights.

---

[3] Montreal Protocol No. 4 provides that the Special Drawing Rights unit of measurement refers to Special Drawing Rights as defined by the International Monetary Fund. The International Monetary Fund, in turn, defines Special Drawing Rights as a fluctuating, weighted basket of currencies, with each currency periodically evaluated according to its relative importance to world trade and finance. Conversion of an award made in Special Drawing Rights into a national currency is made at the date of the judgment. See Montreal Protocol No. 4, art. VII (amending Article 22 of the Warsaw Convention). On July 30, 2007, the IMF valued 100,000 Special Drawing Rights at $153,078. See International Monetary Fund, SDR Valuation, http://www.imf.org/external/np/fin/data/rms_sdrv.aspx.

Thus, Plaintiffs are entitled to partial judgment in the amount of the equivalent in United States dollars of 100,000 Special Drawing Rights. I do not rule at this point on the issue of interest—if it should be available, in what amount, and from which date. The parties may address the issues of interest at such time as the remaining issues of this case are tendered for decision.

B. Summary Judgment under Rule 56

i. General Principles

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must demonstrate the absence of any material factual issue genuinely in dispute, and the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party may not rely, however, "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1987).

Rule 56 of the Federal Rules of Civil Procedure requires the court to engage in a two-step inquiry: First, the court must determine whether the moving party has properly supported its motion for summary judgment, as the burden of production lies with the moving party. See Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001) ("[T]he the burden of the nonmovant to respond arises only if the motion is properly 'supported'—and therefore summary judgment only is 'appropriate' when the moving party has met its burden of production."). Where the nonmoving party bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an

7

absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. at 325. Second, if the moving party has properly supported its motion, the court must determine whether the nonmovant's response, "by affidavits or as otherwise provided [in Rule 56], sets forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

      ii. Summary Judgment under Articles 17 and 20 of the Warsaw Convention

    As at trial, to sustain a motion for summary judgment under Article 17, the plaintiff must show that an accident taking place on board an aircraft caused his injuries. Once plaintiff has made this showing, the burden of proof shifts to the defendant carrier, who may rebut the presumption of liability thus established by showing, pursuant to Article 20, that it took all reasonable measures to avoid the damage that plaintiff suffered. At this stage, the defendant must "come forward with relevant proof." Kinney Shoe, supra. In reply, if the plaintiff demonstrates that defendant failed to take a specified measure, such that no reasonable jury could find that defendant had taken all precautions that in sum were appropriate to the risk, the plaintiff is entitled to summary judgment. Plaintiff must make this final showing, whether by admissible evidence or by pointing out the absence of evidence to support the carrier's claims, because the moving party bears the burden of establishing its entitlement to summary judgment.

**II. Analysis**

  A. Defendant's Arguments that the Motion is Premature

    Defendant concedes that Plaintiffs' injuries were caused by an "accident" within the meaning of Article 17 of the Warsaw Convention. See Def. Local Civ. Rule 56.1 Stmt. ¶¶ 5, 11. Defendant further concedes its liability for 100,000 Special Drawing Rights per passenger under its carrier tariff, but reserves its right to assert an "all reasonable measures" defense under Article 20 of the Warsaw Convention for damages above 100,000 Special Drawing Rights. Rather than come forward with proof that it and its agents took all reasonable measures,

however, Defendant argues that summary judgment is premature because: 1) the relevant standard of care is undefined; 2) the admissibility of passages of the 9/11 Commission Report is undetermined; and 3) discovery is incomplete. I rule on each of these arguments, and then turn to Defendant's contention that, in any event, genuine issues of material fact exist that preclude summary judgment.

    i. <u>Relevant Standard of Care</u>

  Defendant's argument that the Court must rule on the relevant standard of care before it can respond to a motion for summary judgment under the Warsaw Convention is without merit. Lawyers often must argue their case without the benefit of an advance ruling on issues of law. In any event, the standard of care that Defendant must satisfy in order to sustain its affirmative defense is set forth in the Warsaw Convention treaty itself: Defendant must prove that it took "all [reasonable] measures to avoid damages." Warsaw Convention, art. 20. <u>See also</u> Part I.A.ii, <u>supra</u>.

    ii. <u>Admissibility of Passages of 9/11 Commission Report</u>

  Defendant's argument that the Court must rule on the admissibility of information derived from the 9/11 Commission Report before it can respond to a motion for summary judgment under the Warsaw Convention, <u>see</u> Def. Opp. Mem. at 2, 10, is also without merit. Defendant should argue that Plaintiffs' evidence is inadmissible, if that is its position. Instead, Defendant argues that statements in the 9/11 Commission Report might be inadmissible, but if not, the Report supports its position in this litigation more than it supports Plaintiffs' position, and thus creates disputed issues of material fact. Indeed, both sides make the identical claim that, in light of the 9/11 Commission Report and other evidence, a ruling on this motion in favor of the other side would be "inconceivable." Def. Opp. Mem. at 14; Pls. Reply Mem. at 21.

Both sides argue improperly. If findings of the 9/11 Commissioners are moved into evidence, and apparently both parties intend to do so, the parties' burden is to identify specifically the particular findings they respectively wish to proffer, and support their proffers by arguments why the findings should be admissible, pursuant to Rule 803(8), or other sections of the Federal Rules of Evidence. The Court would then be in a position to make rulings on admissibility. I decline to make abstract and hypothetical rulings on extended narratives found in the 9/11 Report.

### iii. Discovery is Incomplete

Defendant's objection that it cannot present by affidavit facts essential to justify its opposition, Fed. R. Civ. P. 56(f), because discovery at this stage is incomplete and ongoing, is sustained. In order to carry its affirmative defense, Defendant must prove that it took all reasonable measures appropriate to the risk to avoid the damage. Thus, Defendant has the burden to show the risks of which it was or reasonably should have been aware, the measures it took to avoid or mitigate the risk, the nature and scope of government regulations and whether such regulations were guides to its conduct or imposed limitations on actions that it otherwise would have taken, and how all of these measures, and others that might be relevant, relate to the damage suffered by Plaintiffs.

Some, perhaps much, of what is known about the measures Defendant took and the manner in which the hijackers executed the September 11th plot is the result of government investigation. Defendant argues, however, that its discovery needs are broader and more extensive than that found in the 9/11 Report. As Defendant's Rule 56(f) affidavit states, this discovery, as well as expert discovery, is not complete. See Affidavit of Desmond T. Barry, Jr. ¶¶ 6, 7 (May 7, 2007) ("Barry Aff."). To meet its burden, Defendant is entitled to conduct that discovery before having to present evidence supporting its affirmative defense. Plaintiffs'

10

motion, to the extent it seeks recovery beyond 100,000 Special Drawing Rights, as clearly they do, is premature, and is denied on that basis.

    B.  <u>Genuine Issues of Material Fact</u>

American Airlines argues that it is now clear from the record that genuine issues of material fact exist regarding the screening of the terrorists before they boarded, and for that reason, I should deny Plaintiffs' motion. I disagree.

Plaintiffs' principal assertion, for the purpose of obtaining summary judgment, is that a screener at Dulles Airport failed adequately to handwand—that is, examine with a handheld metal detector—one of the hijackers as he passed through a security checkpoint. Defendant's Checkpoint Operations Guide in effect on September 11, 2001 demonstrates how to conduct an inspection with the handwand and instructs that "[b]y the time a screener has completed a hand-held metal detector inspection he or she should have neared the floor eight times." Barry Aff., Ex. B at 4-8. Defendant does not seriously contest Plaintiffs' assertion that the screener failed to move the handwand to the floor more than two times, but argues that whether the screener took all reasonable measures is a question of fact for the jury to decide. Defendant further argues that "there is no evidence that the two hijackers depicted in the video even carried a prohibited item on their persons through the checkpoint." Def. Opp. Mem. at 12.

Defendant, not Plaintiffs, bears the burden of showing that it took all reasonable measures and that anything less did not affect the hijackers' ability to board the airplane. Defendant's suggestion that the hijackers may not have smuggled contraband past the Dulles screeners is speculative, and cannot satisfy its burden under Article 17. But it is premature to find against Defendant on this point, for Defendant has not had sufficient opportunity to complete discovery. The determination, whether or not there is a genuine issue of material fact

11

requiring trial, is one to be made after relevant and appropriate discovery has been completed, and not at this stage. Plaintiffs may move for summary judgment again when it is appropriate to do so.

      C. <u>Attorneys' Fees and Litigation Expenses under the Hague Protocol</u>

Plaintiffs argue that in addition to their recovery of damages, they are entitled also to recover their litigation expenses, including their attorneys' fees. Plaintiffs claim that Article 22(4) of the Warsaw Convention, as Amended by the Protocol Done at The Hague on 28 September 1955, 478 U.N.T.S. 371 (the "Hague Protocol"), gives them this additional right. The Hague Protocol provides in relevant part:

> The limits prescribed in this Article shall not prevent the court from awarding, in accordance with its own law, in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff.

Article 22(4).

Plaintiffs argue that Article 22(4) of the Hague Protocol was adopted to make clear that the limits of recovery provided by the Warsaw Convention were not to limit the prevailing party's right to recover litigation expenses, including attorneys' fees. I address this point, even though Plaintiffs' claims are not entirely adjudicated, because it is clear that Plaintiffs are prevailing parties at least to the extent of 100,000 Special Drawing Rights, and thus their claim for litigation expenses, including attorneys' fees, at least on this portion of their potential recovery, must be decided. A decision can be postponed until Plaintiffs' entire claim becomes ripe for adjudication, but a decision cannot be avoided.

Article 22(4) of the Warsaw Convention, as amended by the Hague Protocol, provides that "the limits prescribed in [Article 22] shall not prevent the court from awarding" attorneys' fees "in accordance with its own law." The intent of this provision was to make clear

12

to American courts that an award of attorneys' fees was not prevented by the limits to recovery provided by the Warsaw Convention, since "no one outside the United States had previously thought that the Warsaw Convention prevented a charge on the defendant for the plaintiff's costs." Motorola, Inc. v. Fireman's Fund Ins. Co., 308 F.3d 995, 1007 (9th Cir. 2002) (quoting Lowenfeld & Mendelsohn, 80 HARV. L. REV. at 508)). But removing treaty impediments to an award of attorneys' fees is not the same as creating a right to attorneys' fees. That issue, whether a prevailing party has the right to recover attorneys' fees, is to be determined by the treaty nation's "own law," in this case, either federal law or the law of the appropriate state. Article 22(4) of the Hague Protocol does not itself create a right to reimbursement of attorneys' fees.

      Section 408(b)(2) of the Air Transportation Safety and System Stabilization Act of 2001, Pub. L. 107-42, 115 Stat. 230, reprinted as amended in note following 49 U.S.C. § 40101 ("Stabilization Act"), provides that the "substantive law for decision in any such suit shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law." Plaintiffs' flight originated and crashed in Virginia. There is nothing in Virginia law or federal law to support an award of attorneys' fees. See Va. Code Ann. § 8.01-52 (enumerating damages awards); Va. Code Ann. § 8.01-54(C) (distinguishing between attorneys' fees and damages); Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."); see also Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc., 737 F.2d 456, 459 (5th Cir. 1984) (holding that Warsaw Convention plaintiff may not recover attorneys' fees under Texas law or federal law). In the absence of argument by one or the other party that some other law applies, it is not necessary to analyze the laws of other states or sovereigns. See

Zicherman v. Korean Air Lines Co., 516 U.S. 217, 229 (1996) (declining to determine which sovereign's law applied where parties had not contested the issue).

Thus, United States' law, both federal and state, do not support Plaintiffs' right to recover litigation expenses, including attorneys' fees. And, in light of this ruling, it is unnecessary to decide if the United States, as of September 11, 2001, had consented to be bound by the Hague Protocol by reason of having adhered later to Montreal Protocol No. 4. See Avero Belgium Ins., 423 F.3d at 83 (acknowledging this "difficult question") (quoting Letter of Submittal by Secretary of State Colin L. Powell, June 15, 2002, S. Treaty Doc. 107-14 at ix). Since it is clear that Article 22(4) does not authorize a recovery of litigation expenses, including attorneys' fees, and that Plaintiffs' motion in this respect has to be denied, it is unnecessary to determine if the United States became a party to the Hague Protocol as of September 11, 2001.

D.  Plaintiffs' Non-Warsaw Convention Claims

The Amended Complaints allege claims on various grounds against American Airlines, and against a number of other defendants. The issue that I address now is whether these counts, other than Count Three, the count that seeks recovery against American Airlines under the Warsaw Convention, should be dismissed.

The law of the state in which the crash occurred governs these actions, unless inconsistent with, or preempted by, federal law. Stabilization Act § 408(b)(2). Article 24(1) of the Warsaw Convention, as amended, provides:

> In the carriage of passengers and baggage, any action for damages, however founded, can only be brought subject to the conditions and limits set out in this Convention, without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.

Montreal Protocol No. 4, art. VIII (amending Warsaw Convention, art. 24). Accordingly, "[a] passenger whose injuries fall within the scope of the Warsaw Convention is either entitled to

14

recovery under the Convention or not at all." Magan, 339 F.3d at 161 (2d Cir. 2003) (citing El Al Israel Airlines v. Tsui Yuan Tseng, 525 U.S. 155 (1999)); see also King v. American Airlines, 284 F.3d 352, 359 (2d Cir. 2002). Because all of Plaintiffs' injuries arise out of events relating to the carriage of passengers by American Airlines Flight 77, and the hijacking and subsequent crash of that flight during that air carriage, the actions of the passengers for damages against American Airlines are limited as set forth in the Warsaw Convention. Thus, any claims against American Airlines can "only be brought" under the Warsaw Convention, and all counts against it, other than Count Three, are dismissed.

Plaintiffs' claims against the non-carrier defendants also must be dismissed: Article 30(2) of the Warsaw Convention provides that "the passenger or his representative can take action only against the carrier who performed the transportation during which the accident … occurred." In Shirobokova v. CSA Czech Airlines, Inc., 376 F. Supp. 2d 439 (S.D.N.Y. 2005), plaintiff brought claims against Delta Airlines and CSA Czech Airlines. The court dismissed plaintiff's claims against Delta Airlines pursuant to Rule 12(b)(6), Fed. R. Civ. P., holding that because plaintiff had alleged that she suffered injuries during a flight operated by CSA Czech Airlines, the code-share partner Delta Airlines was not a "carrier" under Article 30(2) of the Warsaw Convention. See id. at 443. Here, there is no dispute of fact that American Airlines was the "carrier" for Plaintiffs' flight, and the complaints are dismissed in their entirety as to all defendants except American Airlines.

On a motion for summary judgment, the court has jurisdiction to search the record and, to the extent appropriate, award judgment to either the moving or the responding party. See Korea Life Ins. Co. v. Morgan Guar. Trust Co. of New York, 269 F. Supp. 2d 424, 446 (S.D.N.Y. 2003). Since, however, Plaintiffs' claims against defendants other than American

Airlines were not briefed, Plaintiffs have leave until August 10, 2007 to support their claims against any or all these other defendants, and I will delay entering judgment until reviewing any such submission.

## Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED as to Count Three in plaintiff Falkenberg's and plaintiff Teague's Amended Complaints for that portion of their Warsaw Convention claims equivalent to 100,000 Special Drawing Rights, and DENIED without prejudice as to that portion of their Warsaw Convention claims in excess of 100,000 Special Drawing Rights. The parties shall stipulate, by August 10, 2007, the equivalent in United States dollars of 100,000 Special Drawing Rights, without any computation of interest at this point. Plaintiffs' motion to recover litigation expenses, including attorneys' fees, is DENIED.

Plaintiffs' non-Warsaw Convention claims (all counts except for Count Three in each complaint) are DISMISSED as to all defendants, and the complaint is DISMISSED in its entirety as to all defendants except for defendant American Airlines, Inc., which remains in the case. Plaintiffs may renew their motion for summary judgment for the remaining amount of their Warsaw Convention claims at a more appropriate point.

The Clerk shall await a further order before preparing judgment.

SO ORDERED.

Date:   July 30, 2007
        New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

16